# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A Black Dell Inspiron 15 Laptop with<br>Serial No. J0RRLJ2 | Case No. 20-MJ-7090 |

### APPLICATION FOR A SEARCH WARRANT BY TELEPHONE

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the    Central    District of    Illinois   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 513 | Possession of Counterfeit Securities |
| 18 U.S.C. § 1028 | Identity Theft |
| 18 U.S.C. § 1708 | Theft or Receipt of Stolen Mail |

The application is based on these facts:

See the affidavit of U.S. Postal Inspector Jordan Tipton, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Jordan Tipton
*Applicant's signature*

U.S. Postal Insp. Jordan Tipton
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means, namely telephone.

Date: June 24, 2020

s/Eric Long
*Judge's signature*

City and state: Monticello, IL

HON. ERIC I. LONG, U.S. MAGISTRATE JUDGE
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

IN THE MATTER OF THE SEARCH OF )
A Black Dell Inspiron 15 Laptop with ) Case No. 20-MJ-<u>7090</u>
Serial No. J0RRLJ2 )

<u>**AFFIDAVIT IN SUPPORT OF APPLICATION**</u>

I, Jordan Tipton, a sworn federal agent with the United States Postal Inspection Service ("USPIS"), being duly sworn, depose and state as follows:

**Introduction & Agent Background**

1. I have been employed as a Postal Inspector since August 2018 and am currently assigned to the multifunctional team in Springfield, Illinois, within the Chicago Division. I graduated from the USPIS Federal Law Enforcement Training Academy in November of 2018. I received federal law enforcement training from the USPIS in areas of prohibited mailing narcotics, mail fraud, mail theft, identity theft, credit card fraud, robberies, child exploitation, burglaries, and threats/assaults made against USPS employees. During my employment as a Postal Inspector, I have participated in investigations involving the theft of mail, counterfeit USPS keys, narcotics investigations, burglaries of USPS property, identity theft, credit card fraud, and threats/assaults made against USPS employees. Prior to becoming a Federal Law Enforcement Officer I was a police officer with the St. Louis County Police Department for 5 ½ years. Prior to being a St. Louis County Police Officer, I successfully completed the six month St. Louis County and Municipal Police Academy. Upon my successful completion of the police academy I was employed as a St. Louis County Police Officer, where I investigated many varieties

of crime from robberies, assaults, thefts, burglaries, destruction of properties, fraud, and conducted numerous narcotic investigations. Combining my federal and St. Louis County experience I have approximately a total of 8 years of law enforcement experience.

2. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.

### Identification of the Device to be Examined

3. The property to be searched is a black in color Dell Inspiron 15 Laptop, bearing serial number J0RRLJ2, hereinafter the "Device", more particularly described in Attachment A. The Device is currently in the custody of the U.S. Postal Inspection Service located at 411 E Monroe St. Springfield, IL 62701. The Device is associated with USPIS case # 3086029, evidence #IS0001094805.

4. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### The Investigation & Probable Cause

5. On 5/21/2020 a traffic stop was conducted by the Danville Police Department. The traffic stop resulted in the driver of the vehicle Amanda Glass being taken into custody, reference an active warrant. The vehicle was a white in color 2019 Dodge Ram 1500 bearing Colorado registration ABXD14. Danville PD requested the assistance of the Vermilion County Sheriff's Department, due to a law enforcement bulletin recently sent out by Vermilion County Sheriff's. The bulletin was in regards to a

suspect passing fraudulent checks, in reference to Vermilion Country Sheriff's Police Report 2020-3883. Danville PD believed Amanda Glass and the white Dodge Ram she was driving, was the vehicle/suspect involved in passing the fraudulent checks. It should be noted Glass's vehicle was pulling a stolen trailer at the time of her arrest, and the trailer was full of miscellaneous items. Vermilion County Investigator Jesse Roach interviewed Amanda Glass, where Glass admitted knowledge of an individual creating fraudulent checks, but denied involvement. Glass also claimed to have purchased the trailer her vehicle was pulling, and claimed to have the title/bill of sale. It should be noted there was not a bill of sale or title discovered, and the trailer was in fact reported stolen.

6. On 5/22/2020, Vermilion County Sheriff investigator Jesse Roach gave sworn oral testimony on the facts known at that time in his investigation, and provided probable cause to believe items of evidentiary value would be discovered in Glass's White Dodge Ram, and the stolen trailer. Investigator Jesse Roach obtained two search warrants authorized by a judge in Vermilion County, Illinois. One search warrant was for the vehicle (White Dodge Ram) driven by Glass, and the other warrant was for the stolen trailer her vehicle was pulling. Both warrants were executed and resulted in the following findings:

   a. String/shoelace attached to a sticky d-con glue trap, commonly referred to as a "Fishing device" used to steal U.S. Mail.
   b. Three wigs (two blonde wigs and the other wig is a purple/dark pink) and a black bandana.
   c. Black Dell Inspiron 15 Laptop (serial number J0RRLJ2) and charger.
   d. White Canon printer (Serial number: NCSA142883) and cord.
   e. Check printer paper (Check Stock).
   f. Printed Checks.
   g. Miscellaneous receipts.

    h. U.S. Mail belonging to victims Patti Winland and James Brooks, who both had their PO Boxes forcibly tampered with at the Collison, IL Post Office.
    i. Fake Covid-19 medical documents.
    j. Journal with notes of stores that will accept checks. Another page in journal has the words: bolt cutters, check paper, laptop.
    k. Miscellaneous money orders.
    l. Miscellaneous state ID's/driver license/social security cards/passports.
    m. Miscellaneous debit/credit cards and store rewards/gift cards.
    n. Black Michael Kors handbag and a grey/black wallet
    o. Approximately 295 recovered stolen checks.
    p. Miscellaneous rifled mail and tax documents.

7. On 5/27/2020 U.S. Postal Inspectors responded to the Vermilion County Sheriff's Office, and began assisting in the investigation.

8. At this point in the investigation a total of 310 victims have been identified across multiple states. The victims known to date are 248 Individuals, and 62 businesses. The victims range from the following states: Illinois, Texas, Colorado, Missouri, and Indiana. Approximately 295 checks have been identified as stolen, and believed to be stolen out of the U.S. Mail. Stolen checks from some of these victims were discovered in the execution of the Vermilion County Sheriff's search warrants on Amanda Glass's vehicle and trailer. The stolen, rifled mail discovered in Glass's vehicle and trailer had a sticky residue on the envelopes. The sticky residue was consistent with the D-con fishing device discovered in Glass's possession.

9. "Fishing Devices" are known manually created devices used to steal U.S. Mail. They usually involve a string and some form of extremely sticky substance at the end of the string, that helps pull U.S. mail out of the blue USPS collection boxes. The device is used by dropping the string with the sticky substance inside the USPS blue collection box chute, and then pulling the string out with the goal of U.S. Mail attached

to the sticky part of the device. Stolen mail belonging to victims who had their PO Boxes forcibly tampered with at the Collison, IL Post Office was also discovered.

10. Throughout May 2020, Law enforcement agents with the Vermilion County Sheriff's Department received complaints from individuals reporting unauthorized transactions were made during May 2020 from their bank accounts, by passing fraudulent checks at various local businesses. Law enforcement agents obtained video surveillance from the businesses where the unauthorized (fraudulent) checks were passed, from the date and approximate time of the transactions according to receipts. Video surveillance and still images of the following transactions involving fraudulent checks are as follows:

  a. 5/10/2020-two fraudulent transactions at Meijer (Grocery store). Amanda Glass is seen in surveillance footage of both transactions arriving in her White Dodge Ram, at the counter passing a fraudulent check, and returning to her White Dodge Ram

  b. 5/10/2020-two fraudulent transactions at Walmart. Amanda Glass is seen in surveillance footage passing the fraudulent checks, and returning to her white Dodge Ram.

  c. 5/11/2020-fraudulent transaction at Meijer. Amanda Glass is seen at the counter passing the fraudulent check.

  d. 5/13/2020-fraudulent transaction at Dunham's Sports. Amanda Glass is seen on surveillance footage passing the fraudulent check.

e. 5/17/2020-two fraudulent transactions at Meijer. In one video Amanda Glass is seen engaging in the transaction at the counter wearing a purple/pink wig. It appears to be the same wig as the one discovered during the execution of the search warrant. In the 2nd transaction Glass is wearing different clothing, but still has the purple/pink wig on. Glass is seen on video passing the fraudulent check. Glass is also seen exiting the store and returning to her white Dodge Ram.

f. 5/17/2020-fraudulent transaction at IGA (grocery store). Amanda Glass is seen on surveillance footage passing the fraudulent check.

### Computer, Electronic Storage, and Forensic Analysis

11. Based on my knowledge, training, and the knowledge, training, and experience of other agents and inspectors with expertise in computer and electronic/digital evidence, I believe there is probable cause to believe that things were once stored on the device may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

12. This application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage

media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, pieces, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to

draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

13. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

14. I know that when an individual uses a computer to unlawfully access another person's information, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

15. Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that

computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

   a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software website, or operating system that is being searched;

   b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

   c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

   d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with

the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

16. Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set

up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

17. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

18. Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19. In my experience it is common practice for individuals creating forged checks to be in possession of a laptop and printer. A common practice is to use a laptop computer containing check printing software. When combining the facts that; there was a laptop computer, what appeared to be counterfeit checks, blank check stock, and a printer, I believe probable cause exists that the Device contains evidence, fruits and instrumentalities of violations of Title 18 United States Code, Section 513 (a), possessing

counterfeit securities, Title 18, United States Code, Section 1028, Identity theft, Title 18, United States Code, Section 1708, Theft or receipt of stolen mail matter.

                                          s/Jordan Tipton
                                          Jordan Tipton
                                          United States Postal Inspector

Attested to by reliable electronic means,
in accordance with Fed. R. Crim. P. 4.1 on June __24__, 2020.

s/Eric Long

Hon. Eric I. Long
United States Magistrate Judge
Central District of Illinois

## ATTACHMENT A

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

The property to be searched is a black in color Dell Inspiron 15 Laptop, bearing serial number J0RRLJ2. The Device is currently in the custody of the U.S. Postal Inspection Service located at 411 E Monroe St. Springfield, IL 62701. The Device is associated with USPIS case # 3086029.

# ATTACHMENT B

1.      This warrant authorizes a forensic examination for the purpose of identifying electronically stored information that relate to violations of Federal Law, specifically; Title 18, United States Code, Sections 513(a), 2028, and 1028A including but not limited to:

a.      Records in support of the criminal acts involving the illegal and/or: fraudulent creating of financial documents.

b.      Records, pre-paid calling cards, receipts, notes, ledgers (including computer software) and other papers relating to the sale and /or transfer of and financial crimes;

c.      Address and/or telephone books reflecting names, addresses, and/or telephone numbers of associates;

d.      Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, ledgers, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, tax records, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting; transfer, concealment and/or expenditure of money;

e.      Any and all records of personal finances and/or business operations, as prescribed by the Financial Accounting Standards Board (FASB), which details transactions in support of a personal and/or business operation to include but limited to: purchases, sales, receipts and payments, deposits, withdrawals, by an individual or business;

f.      Records, receipts reflecting transactions with any financial institution to include, but not be limited to, banks or check cashing businesses.

g.      Emails, and any other form of electronic communication related to all of the above.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage ( such as flash memory or other media that can store data) and any photographic form.